1  Thomas W. McNamara
   mcnamarat@ballardspahr.com
2  655 West Broadway, Suite 1600
   San Diego, California 92101-8494
3  Telephone:   619-696-9200
   Facsimile:   619-696-9269
4  *Receiver*

5  Daniel M. Benjamin (SBN 209240)
   benjamind@ballardspahr.com
6  Andrew W. Robertson (SBN 62541)
   robertsona@ballardspahr.com
7  Ballard Spahr LLP
   655 West Broadway, Suite 1600
8  San Diego, California 92101-8494
   Telephone:   619-696-9200
9  Facsimile:   619-696-9269
   *Attorneys for Receiver*

10

11                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
12

13  FEDERAL TRADE COMMISSION,            | MISC. CASE NO. _____

14              Plaintiff,

15       v.                              **NOTICE OF FEDERAL TRADE
                                         COMMISSION'S FILING OF
16  MDK MEDIA INC., a California corporation also   COMPLAINT AND TEMPORARY
    doing business as SE VENTURES, GMK    RESTRAINING ORDER APPOINTING
17  COMMUNICATIONS, and EMG; MAKONNEN    RECEIVER PURSUANT TO 28 U.S.C.
    DEMESSOW KEBEDE, individually and as an   § 754**
18  officer and owner of MDK Media Inc.;
    TENDENCI MEDIA LLC, a California limited   United States District Court
19  liability company; SARAH ANN BREKKE,   Central District of California
    individually and as a member of Tendenci Media   Western Division
20  LLC; MINDKONTROL INDUSTRIES LLC, a   Case No. 2:14-cv-05099-JFW (SHx)
    California limited liability company;
21  CHRISTOPHER THOMAS DENOVELLIS,
    individually and as a member of MindKontrol
22  Industries LLC; ANACAPA MEDIA LLC, a
    California limited liability company; WAYNE
23  CALVIN BYRD II, individually and as a member
    of Anacapa Media LLC; BEAR
24  COMMUNICATIONS LLC, a California limited
    liability company; JAMES MATTHEW
25  DAWSON, individually and as a member of Bear
    Communications LLC; NETWORK ONE
26  COMMERCE INC., a Nevada corporation; and
    CASEY LEE ADKISSON, individually and as an
27  officer and owner of Network One Commerce Inc.,

28              Defendants.

1    On July 1, 2014, the Federal Trade Commission filed a Complaint against Defendants in

2    the United States District Court for the Central District of California. Attached hereto as Exhibit

3    A is a certified copy of the Complaint. Court-Appointed Receiver, Thomas W. McNamara

4    ("Receiver"), by and through the undersigned counsel, hereby provides notice, pursuant to 28

5    U.S.C. § 754, that on July 7, 2014, the Court entered a Temporary Restraining Order ("TRO") as

6    to Defendants MDK Media Inc. also d/b/a "SE Ventures," "GMK Communications," and

7    "EMG;" Tendenci Media LLC; MindKontrol Industries LLC; Anacapa Media LLC; Bear

8    Communications LLC; Network One Commerce Inc.; Makonnen Demessow Kebede; Sarah

9    Anne Brekke; Christopher Thomas DeNovellis; Wayne Calvin Byrd II; James Matthew Dawson;

10    and Casey Lee Adkisson appointing Mr. McNamara as Receiver over the Receivership

11    Defendants as defined in the TRO at pages 3-5. A certified copy of the TRO is attached hereto

12    as Exhibit B.

13    Respectfully submitted this 14th day of July, 2014.

14

15    BALLARD SPAHR LLP

16

17    By: _____

18        Daniel M. Benjamin
            Attorneys for Thomas W. McNamara,
            Court-Appointed Receiver
19        Email: benjamind@ballardspahr.com

20

21

22

23

24

25

26

27

28

EXHIBIT A



DAVID C. SHONKA
Acting General Counsel
FAYE CHEN BARNOUW, CA Bar No. 168631
fbarnouw@ftc.gov
MARICELA SEGURA, CA Bar No. 225999
msegura@ftc.gov
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024
Tel: (310) 824-4343
Fax: (310) 824-4380

Attorneys for the Plaintiff
Federal Trade Commission



FILED
CLERK, U.S. DISTRICT COURT

JUL 3 - 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT

JUL   1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

        Plaintiff,

    v.

MDK MEDIA INC., a California
corporation also doing business as SE
VENTURES, GMK COMMUNICATIONS,
and EMG;

MAKONNEN DEMESSOW KEBEDE,
individually and as an officer and owner of
MDK Media Inc.;

TENDENCI MEDIA LLC, a California
limited liability company;

SARAH ANN BREKKE, individually and
as a member of Tendenci Media LLC;

MINDKONTROL INDUSTRIES LLC, a
California limited liability company;

CHRISTOPHER THOMAS
DENOVELLIS, individually and as a
member of Mindkontrol Industries LLC;

ANACAPA MEDIA LLC, a California
limited liability company;

WAYNE CALVIN BYRD II, individually
and as a member of Anacapa Media LLC;

Case No. CV14-5099 JFW-SH

COMPLAINT FOR PERMANENT
INJUNCTION AND OTHER
EQUITABLE RELIEF

1

1   BEAR COMMUNICATIONS LLC, a
    California limited liability company;
2
3   JAMES MATTHEW DAWSON,
    individually and as a member of Bear
4   Communications LLC;

5   NETWORK ONE COMMERCE INC., a
    Nevada corporation; and
6
7   CASEY LEE ADKISSON, individually and
    as an officer and owner of Network One
8   Commerce Inc.,

                    Defendants.
9

10

11        Plaintiff, the **Federal Trade Commission** ("FTC"), for its Complaint

12   alleges:

13        1.    The FTC brings this action under Section 13(b) of the Federal Trade

14   Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary,

15   preliminary, and permanent injunctive relief, rescission or reformation of contracts,

16   restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

17   equitable relief for Defendants' acts or practices in violation of Section 5(a) of the

18   FTC Act, 15 U.S.C. § 45(a).  As explained herein, Defendants have engaged in a

19   widespread scheme to place unauthorized third-party charges on consumers'

20   mobile phone bills, a harmful and illegal practice known as "cramming."

21                      **JURISDICTION AND VENUE**

22        2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C.

23   §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

24        3.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (c)(1)

25   and (2), and (d), and 15 U.S.C. § 53(b).

26                            **PLAINTIFF**

27        4.    The FTC is an independent agency of the United States Government

28   created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC

                                    2

1    Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or

2    affecting commerce.

3        5.    The FTC is authorized to initiate federal district court proceedings, by

4    its own attorneys, to enjoin violations of the FTC Act and to secure such equitable

5    relief as may be appropriate in each case, including rescission or reformation of

6    contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten

7    monies.  15 U.S.C. §§ 53(b) and 56(a)(2)(A).

8                                  **DEFENDANTS**

9        6.    Defendant **MDK Media Inc.** ("MDK") is a California corporation

10   with its principal place of business in Gardena, California.  It also does business as

11   "SE Ventures," "GMK Communications," and "EMG."  MDK transacts or has

12   transacted business in this District and throughout the United States.

13       7.    Defendant **Makonnen Demessow Kebede** ("Kebede") is the sole

14   owner and officer of MDK.  At all times material to this complaint, acting alone or

15   in concert with others, Kebede formulated, directed, controlled, had the authority

16   to control, or participated in the acts and practices of MDK, Tendenci,

17   Mindkontrol, Anacapa, Bear, and Network One.  This includes incorporating

18   MDK; setting up and managing its bank accounts, domain names, and websites;

19   serving as sole signatory on and managing MDK's bank accounts; recruiting the

20   other Defendants to operate as content providers; managing MDK's short code

21   campaigns; participating in the management of the other Defendants' short code

22   campaigns; and directing and/or participating in the other acts and practices set

23   forth in this Complaint.  Kebede resides in this District and, in connection with the

24   matters alleged herein, transacts or has transacted business in this District and

25   throughout the United States.

26       8.    Defendant **Tendenci Media LLC** ("Tendenci") is a California limited

27   liability company with its principal place of business in Los Angeles, California.

28

                                        3

1    Tendenci transacts or has transacted business in this District and throughout the
2    United States.
3        9.      Defendant **Sarah Ann Brekke** ("Brekke") is the owner and sole
4    member of Tendenci. At all times material to this complaint, acting alone or in
5    concert with others, Brekke formulated, directed, controlled, had the authority to
6    control, or participated in the acts and practices of Tendenci. This includes
7    forming Tendenci as a corporate entity; arranging for and managing its mail drop
8    addresses; serving as sole signatory on and managing Tendenci's bank accounts;
9    registering and managing Tendenci's domain names; managing Tendenci's
10   websites, short codes, and short code campaigns; and directing and/or participating
11   in the other acts and practices set forth in this Complaint. Defendant Brekke
12   resides in this District and, in connection with the matters alleged herein, transacts
13   or has transacted business in this District and throughout the United States.
14       10.     Defendant **Mindkontrol Industries LLC** ("Mindkontrol") is a
15   California limited liability company with its principal place of business in San
16   Francisco, California. Mindkontrol transacts or has transacted business in this
17   District and throughout the United States.
18       11.     Defendant **Christopher Thomas DeNovellis** ("DeNovellis") is the
19   owner and sole member of Mindkontrol. At all times material to this complaint,
20   acting alone or in concert with others, DeNovellis formulated, directed, controlled,
21   had the authority to control, or participated in the acts and practices of
22   Mindkontrol. This includes forming Mindkontrol as a corporate entity; serving as
23   sole signatory on and managing its bank accounts; managing its short codes and
24   short code campaigns; and directing and/or participating in the other acts and
25   practices set forth in this Complaint. DeNovellis resides in the Northern District of
26   California, and, in connection with the matters alleged herein, transacts or has
27   transacted business in this District and throughout the United States.
28

4

1    12.    Defendant **Anacapa Media LLC** ("Anacapa") is a California limited
2    liability company with its principal place of business in Los Angeles, California.
3    Anacapa transacts or has transacted business in this District and throughout the
4    United States.

5    13.    Defendant **Wayne Calvin Byrd II** ("Byrd") is the owner and sole
6    member of Anacapa.  At all times material to this complaint, acting alone or in
7    concert with others, Byrd formulated, directed, controlled, had the authority to
8    control, or participated in the acts and practices of Anacapa, Tendenci, and Bear.
9    This includes forming Anacapa as a corporate entity and participating in the
10   formation of Tendenci as a corporate entity; arranging for Anacapa's mail drop
11   addresses; serving as sole signatory on and managing Anacapa's bank accounts;
12   registering its domain names; managing its websites, short codes, and short code
13   campaigns; and directing and/or participating in the other acts and practices set
14   forth in this Complaint.  Defendant Byrd resides in this District and, in connection
15   with the matters alleged herein, transacts or has transacted business in this District
16   and throughout the United States.

17   14.    Defendant **Bear Communications LLC** ("Bear") is a California
18   limited liability company with its principal place of business in Los Angeles,
19   California.  Bear transacts or has transacted business in this District and throughout
20   the United States.

21   15.    Defendant **James Matthew Dawson** ("Dawson") is the owner and
22   sole member of Bear.  At all times material to this complaint, acting alone or in
23   concert with others, Dawson formulated, directed, controlled, had the authority to
24   control, or participated in the acts and practices of Bear, Tendenci, and Anacapa.
25   This includes forming Bear as a corporate entity; participating in the formation of
26   Tendenci and Anacapa as corporate entities; arranging for Bear's mailing
27   addresses; serving as sole signatory on and managing Bear's bank accounts;
28   registering Bear's domain names; managing Bear's domain names and

1   participating in the management of Tendenci's domain names; managing Bear's

2   short codes and short code campaigns; and directing and/or participating in the

3   other acts and practices set forth in this Complaint.  Dawson resides in this District

4   and, in connection with the matters alleged herein, transacts or has transacted

5   business in this District and throughout the United States.

6       16.    Defendant **Network One Commerce Inc.** ("Network One") is a

7   Nevada corporation with its principal place of business in San Diego, California.

8   Network One transacts or has transacted business in this District and throughout

9   the United States.

10      17.    Defendant **Casey Lee Adkisson** ("Adkisson") is the sole owner and

11  officer of Network One.  At all times material to this complaint, acting alone or in

12  concert with others, Adkisson formulated, directed, controlled, had the authority to

13  control, or participated in the acts and practices of Network One and Tendenci.

14  This includes forming Network One as a corporate entity; arranging for its mail

15  drop address; serving as sole signatory on and managing its bank accounts;

16  managing its short codes and short code campaigns; participating in Tendenci's

17  short code campaigns; and directing and/or participating in the other acts and

18  practices set forth in this Complaint.  Adkisson resides in the Southern District of

19  California and, in connection with the matters alleged herein, transacts or has

20  transacted business in this District and throughout the United States.

## COMMERCE

22      18.    At all times material to this Complaint, Defendants have maintained a

23  substantial course of trade in or affecting commerce, as "commerce" is defined in

24  Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' ACTIVITIES

26      19.    Since at least 2012, MDK, Tendenci, Mindkontrol, Anacapa, Bear,

27  Network One, and their principals Kebede, Brekke,  DeNovellis, Byrd, Dawson,

28  and Adkisson (collectively, "Defendants") have operated a scam in which they

6

have "crammed" unauthorized charges onto consumers' mobile phone bills. Many consumers have paid their mobile phone bills without ever noticing these charges; others have paid and then unsuccessfully disputed the third-party charges without obtaining a refund; still others have disputed the charges and succeeded in having them removed only after substantial effort. Defendants have made millions of dollars by engaging in these deceptive and unfair acts and practices.

### The Placement of Third-Party Charges on Mobile Phone Bills

20.     Text messages that are sent as "Premium SMS" texts are billed to the recipient at a higher rate than the standard text message charge (also known as "Short Message Service" or "SMS") and/or are sent as part of a subscription to a service for which there is a recurring monthly charge. A number of wireless phone carriers have allowed third-party merchants, called "content providers," to use the carriers' Premium SMS text message and billing infrastructures to deliver digital goods or services (e.g., daily horoscopes or romance tips) to their customers' mobile phones, and to collect payment for these goods and services through their customers' mobile phone bills.

21.     To access a wireless phone carrier's Premium SMS text message and billing infrastructure, a content provider must first obtain authorization from the wireless phone carrier to bill consumers for a specific good or service (often referred to as a "program") under a five- or six-digit number called a "short code." Taken together, the short code and program are referred to as the content provider's "short code campaign." The wireless phone carrier allows content providers to bill consumers on its Premium SMS billing platform through these short code campaigns. This arrangement is facilitated through a third-party intermediary known as an "aggregator."

22.     Under standard industry practice, a legitimate content provider generally requires the consumer to take two affirmative steps to confirm the consumer's intention to purchase the content provider's digital good or service, a

practice known as "double opt-in" verification. For example, a consumer who visits a content provider's web page advertisement and wants to subscribe to the content provider's program may initiate the subscription process by entering his or her mobile phone number on that web page advertisement. The content provider then sends to the consumer's mobile phone a text message which includes a description of the good or service, a four-digit personal identification number, and instructions how to complete the opt-in process. The second opt-in step occurs when the consumer enters the personal identification number back into the same website to confirm his or her intent to subscribe to the content provider's program. This second opt-in step activates the consumer's subscription. The content provider then sends a text message to the consumer to confirm the subscription activation.

23.     The content provider sends to the aggregator the mobile phone numbers that it has authorization to bill. The aggregator then determines which wireless carrier is associated with each consumer's mobile phone number and submits the Premium SMS charges to the appropriate wireless phone carrier for placement on the consumer's mobile phone bill. The consumer pays the wireless phone carrier for the Premium SMS charges as part of his or her overall mobile phone bill. The wireless phone carrier sends a portion of this money (net of its fees and any refunds the carrier has made to consumers) to the aggregator. The aggregator then transmits a portion of the money (net of its fees and any refunds the aggregator has made to consumers) to the content provider.

<b>Defendants' Cramming of Unauthorized Charges<br>onto Consumers' Mobile Phone Bills</b>

24.     The programs that Defendants purportedly sell to consumers consist of subscriptions for periodic text messages sent to consumers' mobile phones that contain entertainment texts such as short celebrity gossip alerts, "fun facts," and horoscopes. Each of Defendants' subscriptions typically costs $9.99 or $14.99 per month and is set to renew automatically every month. Defendants have billed

8

1  consumers for these programs on the Premium SMS billing platforms of a number

2  of wireless phone carriers.

3      25.    Unlike legitimate content providers, however, Defendants have placed

4  charges for these services on consumers' mobile phone bills without obtaining the

5  consumers' consent, whether through double opt-in verification or another

6  mechanism.

7      26.    Defendants cram charges on consumers' mobile phone bills in at least

8  two ways. For some consumers, Defendants obtain consumers' mobile phone

9  numbers through deceptive website offers that lead consumers to believe they are

10 entering their mobile phone numbers and other personal information onto the

11 website in order to receive a "freebie" such as a gift card or discount coupon.

12 These "freebies" include a $1,000 Walmart gift card from

13 http://walmart.rewardhubzone.com and a $500 Target gift card from

14 http://target4.net, as well as coupons and other items from websites such as

15 http://www.grandsavingscenter.com, http://free-coupons-everyday.com,

16 http://retailbrandprize.com, http://www.onlinegiftrewards.com,

17 http://www.consumergiftspot.com, http://bestbuyraffle.com,

18 http://www.freegasfairy.com, and http://iphone5.newrewardsdaily.com.

19      27.    Other consumers are billed by Defendants without having had any

20 prior contact with Defendants. In these instances, Defendants begin sending to the

21 consumers' mobile phones unsolicited text messages that many consumers assume

22 have been sent in error. Defendants begin cramming charges on consumers'

23 mobile phone bills contemporaneous with the sending of these unsolicited text

24 messages.

25      28.    Regardless of the mechanism Defendants use to obtain consumers'

26 mobile phone numbers, Defendants misrepresent to wireless phone carriers that

27 consumers to whom they have sent unsolicited text messages have knowingly

28

subscribed to Defendants' text message subscription service and authorized the placement of Premium SMS charges on their phone bills.

29.     These billing practices have harmed consumers.  The monthly charges for these subscriptions are often difficult to find in the consumer's mobile phone bill and listed in an abbreviated and confusing form.  Many consumers do not notice Defendants' charges included on their bills and pay their bills in full, thus paying the unauthorized charge without realizing it.  Further, the charges recur unless and until the consumer takes action to unsubscribe.

30.     Those consumers who notice and contest the unauthorized charges have also been harmed.  Consumers report that the process of disputing these charges is frustrating and time-consuming.  Some consumers have been crammed for multiple months before noticing the charges and, even after significant effort, are unable to obtain a full refund.

31.     Wireless phone carriers have suspended or terminated a number of Defendants' short codes because of these billing practices.

32.     Despite these sanctions, Defendants have maintained their access to these wireless phone carriers' Premium SMS billing platforms and have continued to place charges on consumers' mobile phone bills.  Defendants have accomplished this by, among other things, providing false information to the wireless phone carriers and operating under different names.

### Defendants' Participation and Control

33.     MDK began cramming charges in or around 2010.  It ran numerous short code campaigns under the names MDK, GMK Communications, and SE Ventures, which have crammed charges on consumers' mobile phone bills.  These campaigns included "Quiz Alert" (on short code 60168), "Love Connection" and "Destiny Horoscope" (both on short code 64651), "Special Secret Lover" (on short code 68514), and "My Phone Beatz" and "The Stars Horoscopes" (both on short code 79597).  Kebede and MDK ran these campaigns on AT&T Mobility LLC

("AT&T"); Sprint Spectrum, LP, also d/b/a Sprint PCS ("Sprint"); T-Mobile USA,
Inc. ("T-Mobile"); and Cellco Partnership also d/b/a Verizon Wireless ("Verizon").
MDK's billing privileges were terminated by Verizon in October 2011, and by
AT&T in July 2012.  Despite these terminations, MDK continued to cram charges
using similar short code campaigns on other wireless phone carriers' Premium
SMS billing platforms.  MDK's short code campaigns generated over $19 million
in revenues for MDK.

34.     Kebede and MDK also have recruited other content providers—
including Defendants Tendenci, Mindkontrol, Anacapa, Bear, and Network One,
and their principals Defendants Brekke, DeNovellis, Byrd, Dawson, and
Adkisson—to run short code campaigns and cram charges through the wireless
phone carriers' Premium SMS billing platforms.  Tendenci, Mindkontrol, Anacapa,
Bear, and Network One have generated substantial revenues from their cramming
activities and forwarded to MDK a substantial portion.  Kebede and MDK have
made tens of millions of dollars from these deceptive and unfair business practices.
Brekke, Tendenci, DeNovellis, Mindkontrol, Byrd, Anacapa, Dawson, Bear,
Adkisson, and Network One retained the remainder as compensation for their role
in the scheme.

35.     Defendant Tendenci began cramming charges in or around March
2012. Defendants Kebede, Brekke, Byrd, Dawson, and Adkisson directed and/or
participated in Tendenci's fraudulent operations, which ran numerous short code
campaigns—including "My Phone Beatz" and "Text Groove" (both on short code
25260), "Smart Mobile Quiz" (on short code 70890), and "Texting Tips" (on short
code 83016) on T-Mobile, Sprint, and Verizon—and crammed charges onto
consumers' mobile phone bills.  Verizon terminated Tendenci's billing privileges
in July 2012.  Despite this termination, Tendenci continued to cram charges using
similar short code campaigns on other wireless phone carriers' Premium SMS

11

billing platforms.  Tendenci's short code campaigns generated over $5 million in revenues for Tendenci.

36.    Defendant Mindkontrol began cramming charges in or around July 2012.  Defendants Kebede and DeNovellis directed and/or participated in Mindkontrol's fraudulent operations, which ran numerous short code campaigns—including "My Eco Portal" and "Your True Fate Horoscopes" (both on short code 71573) on T-Mobile, Sprint, and AT&T—and crammed charges onto consumers' mobile phone bills.  These short code campaigns generated over $11 million in revenues for Mindkontrol.

37.    Defendant Anacapa began cramming charges in or around July 2012. Defendants Kebede, Byrd, and Dawson directed and participated in Anacapa's fraudulent operations, which ran numerous short code campaigns—including "Mobile Tune Club" (on short code 65815), "Love Match Score" (on short code 54480), and "My Mobile Nine" and "My Cosmic Sign" (both on short code 84653) on T-Mobile, AT&T, and Sprint—and crammed charges on consumers' mobile phone bills.  These short code campaigns generated over $22 million in revenues for Anacapa.

38.    Defendant Bear began cramming charges in or around October 2012. Defendants Kebede, Dawson, and Byrd directed and participated in Bear's fraudulent operations, which ran numerous short code campaigns—including "Tons of Mobile" (on short code 21446), "Horoscopes Now" and "Ur Astrology" (both on short code 27460), and "Text Fun 4 Phone" (on short code 95899) on Sprint and Verizon—and crammed charges on consumers' mobile phone bills. Verizon temporarily suspended Bear's billing privileges in January 2013.  Despite this, Bear continued to cram charges using similar short code campaigns on Sprint's Premium SMS billing platform.  Bear's short code campaigns generated over $4 million in revenues for Bear.

39.    Defendant Network One began cramming charges in or around May 2013.  Defendants Kebede and Adkisson directed and participated in Network One's fraudulent operations, which ran numerous short code campaigns— including "Find Loves Match" (on short code 74881) and "Ringtones Everywhere" (on short code 46806) on Sprint and Verizon—and crammed charges on consumers' mobile phone bills.  Network One's short code campaigns generated over $1 million in revenues for Network One.

## VIOLATIONS OF THE FTC ACT

40.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."  Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

41.    Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

## COUNT I

**Deceptive Acts and Practices in Violation of Section 5 of the FTC Act**

42.    In numerous instances in connection with the sale of Premium SMS services, Defendants have represented, directly or indirectly, expressly or by implication, that consumers are obligated to pay for charges for Defendants' Premium SMS services appearing on consumers' mobile phone bills.

43.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 42 of this Complaint, consumers were not obligated to pay the charges because the consumers did not authorize charges for Defendants' services corresponding to the charges on the bill.

13

44.     Therefore, Defendants' representations as set forth in Paragraph 42 of this Complaint are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### Unfair Billing Practices in Violation of Section 5 of the FTC Act

45.     In numerous instances, Defendants have caused consumers' telephone accounts to be billed without having previously obtained the consumers' express informed consent.

46.     Defendants' actions have caused or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

47.     Therefore, Defendants' practices as set forth in Paragraph 45 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a) and (n).

## CONSUMER INJURY

48.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

49.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other such relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, § 53(b), and the Court's own equitable powers, requests that the Court:

A.   Award such preliminary and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, a temporary and preliminary injunction, asset freeze, appointment of a receiver, an evidence preservation order, and expedited discovery;

B.   Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.   Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission and reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.   Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated:   **JUL 1   2014**

Respectfully submitted,

David C. Shonka
Acting General Counsel

Faye Chen Barnouw
Maricela Segura
Attorneys for Plaintiff
Federal Trade Commission

15

Case 2:14-cv-05099-JFW-SH   Document 1-1   Filed 07/03/14   Page 1 of 5   Page ID #:46

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| *Federal Trade Commission* | *See attached caption* |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| *Faye Chen Barnouw, Maricela Segura* *Federal Trade Commission   Los Angeles, CA* *10877 Wilshire Blvd, Ste 700   90024   2-316-824-4343* | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

*15 U.S.C. § 45 (a)*

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | *CV14-5099* |
|---|---|---|
| CV-71 (06/14) | CIVIL COVER SHEET | Page 1 of 3 |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? <br><br> ☐ Yes  ☒ No <br><br> If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? <br><br> ☒ Yes  ☐ No <br><br> If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? <br><br> *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. <br><br> ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) <br><br> *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. <br><br> ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? <br><br> ☐ Yes  ☒ No <br><br> If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? <br><br> *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. <br><br> ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) <br><br> *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. <br><br> ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A. <br> Orange County | B. <br> Riverside or San Bernardino County | C. <br> Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A? <br><br> ☐ Yes  ☒ No <br><br> If "yes," your case will initially be assigned to the <br> SOUTHERN DIVISION. <br> Enter "Southern" in response to Question E, below, and continue from there. <br><br> If "no," go to question D2 to the right. ➡ | D.2. Is there at least one answer in Column B? <br><br> ☐ Yes  ☒ No <br><br> If "yes," your case will initially be assigned to the <br> EASTERN DIVISION. <br> Enter "Eastern" in response to Question E, below. <br><br> If "no," your case will be assigned to the WESTERN DIVISION. <br> Enter "Western" in response to Question E, below. ⬇ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Los Angeles |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes  ☒ No |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

IX(a). IDENTICAL CASES: Has this action been previously filed in this court?      ☒ NO      ☐ YES

If yes, list case number(s): _____

IX(b). RELATED CASES: Is this case related (as defined below) to any cases previously filed in this court?      ☒ NO      ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):                              DATE:  7 - 1 - 2014

Notice to Counsel/Parties: The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

1   DAVID C. SHONKA
    Acting General Counsel
2   FAYE CHEN BARNOUW, CA Bar No. 168631
    fbarnouw@ftc.gov
3   MARICELA SEGURA, CA Bar No. 225999
    msegura@ftc.gov
4   Federal Trade Commission
    10877 Wilshire Blvd., Ste. 700
5   Los Angeles, CA 90024
    Tel: (310) 824-4343
6   Fax: (310) 824-4380

7   Attorneys for the Plaintiff
    Federal Trade Commission
8

9                UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA
10

11  FEDERAL TRADE COMMISSION,              | Case No.
12                   Plaintiff,            |
13          v.                             | COMPLAINT FOR PERMANENT
                                           | INJUNCTION AND OTHER
14  MDK MEDIA INC., a California           | EQUITABLE RELIEF
    corporation also doing business as SE  |
15  VENTURES, GMK COMMUNICATIONS,          |
    and EMG;                               |
16
    MAKONNEN DEMESSOW KEBEDE,
17  individually and as an officer and owner of
    MDK Media Inc.;
18
    TENDENCI MEDIA LLC, a California
19  limited liability company;

20  SARAH ANN BREKKE, individually and
21  as a member of Tendenci Media LLC;

22  MINDKONTROL INDUSTRIES LLC, a
    California limited liability company;
23
    CHRISTOPHER THOMAS
24  DENOVELLIS, individually and as a
    member of Mindkontrol Industries LLC;
25
    ANACAPA MEDIA LLC, a California
26  limited liability company;

27  WAYNE CALVIN BYRD II, individually
    and as a member of Anacapa Media LLC;
28

                            1

1    BEAR COMMUNICATIONS LLC, a
California limited liability company;

2

3    JAMES MATTHEW DAWSON,
individually and as a member of Bear
Communications LLC;

4

5    NETWORK ONE COMMERCE INC., a
Nevada corporation; and

6

7    CASEY LEE ADKISSON, individually and
as an officer and owner of Network One
Commerce Inc.,

8            Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I hereby attest and certify on 7|11|2011
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

1165



EXHIBIT B

1    DAVID C. SHONKA
     Acting General Counsel
2    FAYE CHEN BARNOUW, CA Bar No. 168631
     fbarnouw@ftc.gov
3    MARICELA SEGURA, CA Bar No. 225999
     msegura@ftc.gov
4    Federal Trade Commission
     10877 Wilshire Blvd., Ste. 700
5    Los Angeles, CA 90024
     Tel: (310) 824-4343
6    Fax: (310) 824-4380

7    Attorneys for the Plaintiff
8    Federal Trade Commission



9                UNITED STATES DISTRICT COURT
10               CENTRAL DISTRICT OF CALIFORNIA

11

12   FEDERAL TRADE COMMISSION,          Case No.
                                        CV14-5099 JFW-SHx
13            Plaintiff,

14       v.                             [Proposed]
                                        TEMPORARY RESTRAINING
15   MDK MEDIA INC., a California       ORDER WITH ASSET FREEZE,
     corporation also doing business as SE   APPOINTMENT OF
16   VENTURES, GMK COMMUNICATIONS,      TEMPORARY RECEIVER, AND
     and EMG;                           OTHER EQUITABLE RELIEF,
                                        AND ORDER TO SHOW CAUSE
17   MAKONNEN DEMESSOW KEBEDE,          WHY A PRELIMINARY
     individually and as an officer and owner of   INJUNCTION SHOULD NOT
18   MDK Media Inc.;                    ISSUE AND A PERMANENT
                                        RECEIVER SHOULD NOT BE
19   TENDENCI MEDIA LLC, a California   APPOINTED
     limited liability company;
20
21   SARAH ANN BREKKE, individually and
     as a member of Tendenci Media LLC;
22
23   MINDKONTROL INDUSTRIES LLC, a
     California limited liability company;

24   CHRISTOPHER THOMAS
25   DENOVELLIS, individually and as a
     member of Mindkontrol Industries LLC;
26   ANACAPA MEDIA LLC, a California
     limited liability company;
27
28   WAYNE CALVIN BYRD II, individually
     and as a member of Anacapa Media LLC;



1

1  DAVID C. SHONKA
   Acting General Counsel
2  FAYE CHEN BARNOUW, CA Bar No. 168631
   fbarnouw@ftc.gov
3  MARICELA SEGURA, CA Bar No. 225999
   msegura@ftc.gov
4  Federal Trade Commission
   10877 Wilshire Blvd., Ste. 700
5  Los Angeles, CA 90024
   Tel: (310) 824-4343
6  Fax: (310) 824-4380

7  Attorneys for the Plaintiff
   Federal Trade Commission
8

FILED
CLERK U.S. DISTRICT COURT

JUL - 7 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEP.

9              UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA

11
                                        Case No.
12  FEDERAL TRADE COMMISSION,      CV14-5099 JFW-SH

13              Plaintiff,
14        v.                         [Proposed]
                                     TEMPORARY RESTRAINING
15  MDK MEDIA INC., a California     ORDER WITH ASSET FREEZE,
    corporation also doing business as SE  APPOINTMENT OF
16  VENTURES, GMK COMMUNICATIONS,   TEMPORARY RECEIVER, AND
    and EMG;                        OTHER EQUITABLE RELIEF,
17                                   AND ORDER TO SHOW CAUSE
    MAKONNEN DEMESSOW KEBEDE,       WHY A PRELIMINARY
18  individually and as an officer and owner of  INJUNCTION SHOULD NOT
    MDK Media Inc.;                 ISSUE AND A PERMANENT
19                                   RECEIVER SHOULD NOT BE
    TENDENCI MEDIA LLC, a California  APPOINTED
20  limited liability company;

21  SARAH ANN BREKKE, individually and
    as a member of Tendenci Media LLC;

22                                   LODGED
    MINDKONTROL INDUSTRIES LLC, a   CLERK, U.S. DISTRICT COURT
23  California limited liability company;
                                     JUL - 1 2014
24  CHRISTOPHER THOMAS
    DENOVELLIS, individually and as a  CENTRAL DISTRICT OF CALIFORNIA
25  member of Mindkontrol Industries LLC;  BY                    DEPUTY

26  ANACAPA MEDIA LLC, a California
    limited liability company;
27
    WAYNE CALVIN BYRD II, individually
28  and as a member of Anacapa Media LLC;

1

1   BEAR COMMUNICATIONS LLC, a
    California limited liability company;

2

3   JAMES MATTHEW DAWSON,
    individually and as a member of Bear
    Communications LLC;

4

5   NETWORK ONE COMMERCE INC., a
    Nevada corporation; and

6   CASEY LEE ADKISSON, individually and
    as an officer and owner of Network One

7   Commerce Inc.,

8                   Defendants.

9

10      Plaintiff Federal Trade Commission ("FTC"), has filed a Complaint for

11  Injunctive and other Equitable Relief pursuant to Section 13(b) of the Federal

12  Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and has applied *ex parte*

13  for the issuance of a Temporary Restraining Order ("TRO") pursuant to Rule 65 of

14  the Federal Rules of Civil Procedure.  The Court having considered the Complaint,

15  Plaintiff's *ex parte* TRO application, and the memorandum of points and

16  authorities and other materials filed in support thereof, finds that:

17                        **ORDER**

18                  **FINDINGS OF FACT**

19      1.   This Court has jurisdiction over the subject matter of this case.  There

20  is also good cause to believe the Court will have jurisdiction over all parties hereto,

21  and that venue in this district is proper.

22

23      2.   There is good cause to believe that Defendants MDK Media Inc. also

24  d/b/a "SE Ventures," "GMK Communications," and "EMG"; Makonnen

25  Demessow Kebede; Tendenci Media LLC; Sarah Anne Brekke; MindKontrol

26  Industries LLC; Christopher Thomas DeNovellis; Anacapa Media LLC; Wayne

27  Calvin Byrd II; Bear Communications LLC; James Matthew Dawson; Network

28  One Commerce, Inc.; and Casey Lee Adkisson (collectively "Defendants") have

1   engaged in and are likely to engage in acts or practices that violate Section 5(a) of

2   the FTC Act, 15 U.S.C. § 45(a), and that the FTC is likely to prevail on the merits

3   of this action.

4       3.    There is good cause to believe that consumers will suffer immediate

5   and continuing harm unless Defendants are restrained and enjoined by Order of

6   this Court.

7

8       4.    Good cause exists for appointing a temporary receiver over Corporate

9   Defendants MDK Media Inc. also d/b/a "SE Ventures," "GMK Communications,"

10  and "EMG"; Tendenci Media LLC; MindKontrol Industries LLC; Anacapa Media

11  LLC; Bear Communications LLC; and Network One Commerce, Inc. ("Corporate

12  Defendants").

13      5.    Weighing the equities and considering the FTC's likelihood of

14  ultimate success, a TRO with an asset freeze, the appointment of a temporary

15  receiver, limited expedited discovery as to the existence and location of assets, and

16  other equitable relief is in the public interest.

17
18      6.    No security is required of any agency of the United States for issuance

19  of a restraining order. Fed. R. Civ. P. 65(c).

20  **DEFINITIONS**

21  For purposes of this Order, the following definitions shall apply:

22      1.    "**Asset**" or "**Assets**" means any legal or equitable interest in, right to,

23  or claim to, any real or personal property of Defendants, or held for the benefit of

24  Defendants, wherever located, whether in the United States or abroad, including

25  but not limited to chattels, goods, instruments, equipment, fixtures, general

26  intangibles, effects, leaseholds, contracts, mail or other deliveries, inventory,

27  checks, notes, accounts, credits, receivables (as those terms are defined in the

28

3

Uniform Commercial Code), shares of stock, futures, and all cash and currency, trusts, including but not limited to any trust held for the benefit of any Defendant, any Individual Defendant's minor children, or any of the Individual Defendants' spouses, and shall include both existing assets and assets acquired after entry of this Order.

2.  **"Corporate Defendants"** means MDK Media Inc., also d/b/a "SE Ventures," "GMK Communications," and "EMG"; Tendenci Media LLC; MindKontrol Industries LLC; Anacapa Media LLC; Bear Communications LLC; Network One Commerce Inc.; and their d/b/a's, successors, and assigns.

3.  **"Defendants"** means all of the Individual Defendants and Corporate Defendants individually, collectively, or in any combination.

4.  **"Document"** and **"Electronically Stored Information"** are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include, but are not limited to:

    a.  The original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter or other data compilations of any kind, including, but not limited to, letters, email, or other correspondence, messages, memoranda, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, work papers, journals, ledgers, statements, returns, reports, schedules, or files; and

    b.  Any electronically stored information stored on any server, smartphone, or any type of mobile device, flash drives, personal digital assistances ("PDAs"), desktops computer and workstations, laptops notebooks, and other portable computers, or other electronic storage media, whether assigned to individuals or in pools of computers available for shared use, or personally owned

4

but used for work-related purposes; backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether stored onsite with the computer used to generate them, stored offsite in another computer facility, or stored, hosted, or otherwise maintained offsite by a third party; and computers and related offline storage used by Defendants or Defendants' participating associates, which may include persons who are not employees of the company or who do not work on company premises.

5. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information.

6. **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

7. **"Individual Defendants"** means Makonnen Demessow Kebede, Sarah Anne Brekke, Christopher Thomas DeNovellis, Wayne Calvin Byrd II, James Matthew Dawson, and Casey Lee Adkisson.

8. **"Person"** means any individual, group, unincorporated association, limited general partnership, corporation, or other business entity.

9. **"Receivership Defendants"** refers to Corporate Defendants, as well as any successors, assigns, affiliates, and subsidiaries that conduct any business related to Defendants' placement of third party charges on mobile phone bills and which the Temporary Receiver has reason to believe are owned or controlled in whole or in part by any of the Defendants.

# I.
## PROHIBITED PRACTICES

IT IS HEREBY ORDERED that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, employees, attorneys, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are temporarily restrained and enjoined from placing or assisting others in placing any charge on a consumer's telephone bill, or from representing or assisting others in representing, directly or indirectly, expressly or by implication, that a consumer is obligated to pay any charge on a telephone bill, unless Defendants have obtained the consumer's express informed consent to the charge and Defendants have made and maintained a record of the consent.

# II.
## PROHIBITION REGARDING CONSUMER INFORMATION

IT IS FURTHER ORDERED that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are temporarily restrained and enjoined from selling, transferring, or disclosing consumer information, including the name, address, telephone number, email address, social security number, birthdate, or other identifying information, or any other data that enables access to a consumer's account (including, but not limited to, a credit card, bank account, telephone billing account or other financial account), of any person or entity, which Defendants obtained prior to entry of this Order in connection with Defendants' services.

### III.

### ASSET FREEZE

IT IS FURTHER ORDERED that Defendants and their officers, agents, servants, employees, and attorneys, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, each are hereby temporarily restrained and enjoined from directly or indirectly:

    A.    Selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any asset (including but not limited to funds, real or personal property, contracts, and consumer lists), or any interest therein, wherever located, including any asset outside the territorial United States that is:

        1.    owned or controlled by any of the Defendants, in whole or in part;

        2.    in the actual or constructive possession of any Defendant;

        3.    held by an agent of any of the Defendants, as a retainer for the agent's provision of services to a Defendant;

        4.    owned, controlled by, or in the actual constructive possession of, or otherwise held for the benefit of, any corporation, partnership, or other entity directly or indirectly owned or controlled by any of the Defendants; including, but not limited to, assets held by any Defendant in any account at any bank or savings and loan institution, such as accounts over which the Individual Defendants have signatory authority, with any broker-dealer, escrow agent, title company, precious metal dealer, transaction processor, customer service agent, commercial mail receiving or forwarding agency, or other financial institution of any kind.

    B.    Opening, or causing to be opened, any safe-deposit boxes titled in the name of or subject to access by any Defendant;

1    C.    Incurring charges or cash advances on any credit card, stored value
2  card, debit card, or charge card issued in the name, singly or jointly, of any
3  Defendant or any other entity directly or indirectly owned, managed, or controlled
4  by any Defendant;

5    D.    Failing to disclose to the FTC, immediately upon service of this
6  Order, information that fully identifies each asset of the Defendants, and each
7  entity holding such asset, including, but not limited to, the entity's name, address,
8  and telephone number, the number of the account, and the name under which the
9  account is held.

10    *Provided*, that the freeze imposed in this Section shall be construed to
11  exclude assets that any of the Defendants acquires following service of this Order,
12  but only if the Defendant can prove that such assets are not derived from activity
13  prohibited by this Order. *Provided further*, that this Section does not prohibit
14  transfers to the Temporary Receiver as specifically required by this Order.

15                                    **IV.**

16
17          **RETENTION OF ASSETS AND DOCUMENTS BY THIRD PARTIES**

18          IT IS FURTHER ORDERED that any financial or brokerage institution,
19  business entity, electronic data host, or person served with a copy of this Order that
20  holds, controls, or maintains custody of any account, document, electronically
21  stored information, or asset of, on behalf of, in the name of, for the benefit of,
22  subject to withdrawal by, subject to access or use by, or under the signatory power
23  of any Defendant or other party subject to Section III above, or has held,
24  controlled, or maintained any such account, document, electronically stored
25  information, or asset, shall:

26    A.    Hold, preserve, and retain within its control and prohibit the removal,
27  withdrawal, transfer, encumbrance, pledge, assignment, dissipation, sale,
28  alteration, or other disposal of any such account, other asset, or documents, except

8

1    as directed in writing by counsel for the FTC, by the Temporary Receiver (with

2    respect to assets of any of the Receivership Defendants), or by further order of this

3    Court;

4        B.    Provide the Temporary Receiver, the FTC, and their agents access to

5    electronically stored information stored, hosted, or otherwise maintained on behalf

6    of Defendants for forensic imaging;

7        C.    Deny access to any safe deposit box titled individually or jointly in the

8    name of, or otherwise subject to access by, any of the Defendants;

9        D.    Provide to the FTC and to the Temporary Receiver, within five (5)

10   business days of notice of this Order, a sworn statement setting forth:

11            1.    The identification of each account or asset;

12            2.    The balance of each account or a description of the nature and

13   value of each asset as of the close of business on the day notification of this Order

14   is received, and, if the account or asset has been closed or moved, the balance or

15   value removed and the person or entity to whom it was transferred; and

16            3.    The identification of any safe-deposit box titled in the name of

17   or subject to access by any of the Defendants.

18

19       E.    Upon request by counsel for the FTC (or by the Temporary Receiver,

20   with respect to assets held for any of the Receivership Defendants), promptly

21   provide the FTC or the Temporary Receiver with copies of all records or other

22   documentation pertaining to such account or asset, including but not limited to

23   originals or copies of account applications, account statements, signature cards,

24   checks, drafts, deposit tickets, transfers to and from the accounts, all other debit

25   and credit instruments or slips, currency transaction reports, 1099 forms, and safe-

26   deposit box logs; and

27       F.    At the direction of the FTC (or the Temporary Receiver, with respect

28   to assets held for any of the Receivership Defendants), and without further order of

9

1  this Court, convert any stocks, bonds, options, mutual funds, or other securities to

2  their cash equivalents.

3       IT IS FURTHER ORDERED that the accounts subject to this provision

4  include existing assets and assets deposited after the effective date of this Order.

5  This Section shall not prohibit transfers in accordance with any provision of this

6  Order, or any further order of the Court.

## V.

## FINANCIAL REPORTS

       IT IS FURTHER ORDERED that within three (3) business days of service

of this Order:

       A.     Each of the Individual Defendants shall complete and deliver to the

FTC the Financial Statement captioned "Financial Statement of Individual

Defendant," a copy of which is attached hereto as **Attachment 1**;

       B.     The Individual Defendants shall prepare and deliver to the FTC and

the Temporary Receiver, the Financial Statement captioned "Financial Statement

of Corporate Defendant," a copy of which is attached hereto as **Attachment 2**, for

each Corporate Defendant of which he or she is a member, officer, a majority

owner or otherwise controls;

       C.     Each of the Individual Defendants shall, on behalf of each business

entity (whether a partnership, limited partnership, joint venture, sole

proprietorship, limited liability company, corporation, or otherwise) of which he or

she is the majority owner or otherwise controls, other than the Corporate

Defendants, complete and deliver to the FTC and Temporary Receiver a separate

copy of the "Financial Statement of Corporate Defendant" for that corporate entity;

and

       D.     Defendants shall provide the FTC and Temporary Receiver access to

records and documents pertaining to assets of any of the Defendants that are held

by financial institutions outside the territory of the United States by signing a consent to release of financial records if requested by the FTC.

## VI.

## CREDIT REPORTS

IT IS FURTHER ORDERED that the FTC may obtain credit reports concerning any of the Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

## VII.

## REPATRIATION OF ASSETS

IT IS FURTHER ORDERED that within five (5) business days following service of this Order, each of the Defendants shall:

A.     Repatriate to the United States all funds, documents, or assets in foreign countries held either: (1) by them; (2) for their benefit; or (3) under their direct or indirect control, jointly or singly;

B.     The same business day as any repatriation under paragraph A above,

1.     Notify the FTC and the Temporary Receiver of the name and location of the financial institution or other entity that is the recipient of such funds, documents, or assets; and

2.     Serve this Order on any such financial institution or other entity;

C.     Provide the FTC and the Temporary Receiver with a full accounting of all funds, documents, and assets outside of the territory of the United States held either: (1) by them; (2) for their benefit; or (3) under their direct or indirect control, jointly or singly;

D.     Hold and retain all repatriated funds, documents, and assets and

11

1   prevent any transfer, disposition, or dissipation whatsoever of any such assets or

2   funds; and

3       E.      Provide the FTC and Temporary Receiver access to all records of

4   accounts or assets of the Defendants held by financial institutions located outside

5   the territorial United States by signing the Consent to Release of Financial Records

6   if requested by the FTC.

7                                    **VIII.**

8               **PRESERVATION OF RECORDS AND TANGIBLE THINGS**

9       IT IS FURTHER ORDERED that Defendants, and their agents, servants,

10  employees, and attorneys, and all persons or entities directly or indirectly under the

11  control of any of them, and all other persons or entities in active concert or

12  participation with any of them who receive actual notice of this Order by personal

13  service or otherwise, and each such person, are hereby temporarily restrained and

14  enjoined from destroying, erasing, mutilating, concealing, altering, transferring or

15  otherwise disposing of, in any manner, directly or indirectly, any documents that

16  relate to the business practices or finances of any of the Defendants, including, but

17  not limited to, such documents as any contracts, accounting data, correspondence,

18  advertisements, computer tapes, discs or other computerized records, books,

19  written or printed records, handwritten notes, telephone logs, telephone scripts,

20  receipt books, ledgers, personal and business canceled checks and check registers,

21  bank statements, appointment books, and copies of federal, state, or local business

22  or personal income or property tax returns.

23      This Section specifically applies to all documents that have been or are

24  displayed on or have been or are accessible from any and all Internet websites

25  owned or controlled by any Defendant.

26

27

28

## IX.
## RECORD KEEPING

IT IS FURTHER ORDERED that each of the Individual Defendants is hereby temporarily restrained and enjoined from failing to make and keep, and to provide to FTC counsel promptly upon request, an accurate accounting that, in reasonable detail, accurately, fairly, and completely reflects such Defendant's income (including all income resulting from any services, activity, or efforts rendered by such Defendant), disbursements, transactions, and use of money, beginning immediately upon service or actual notice of this Order, and continuing daily until otherwise ordered by the Court.

## X.
## NOTIFICATION OF BUSINESS ACTIVITIES

IT IS FURTHER ORDERED that:

A.      Each of the Individual Defendants is hereby temporarily restrained and enjoined from directly or indirectly creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first serving on counsel for the FTC a written statement disclosing the following: (1) the name of the business entity; (2) the business entity's contact information (including physical address, email address, and telephone number); (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended or actual activities.

B.      Each of the Individual Defendants shall notify the FTC at least seven (7) days prior to affiliating with, becoming employed by, or performing any work for any business that is not a named Defendant in this action. Each notice shall include the Defendant's new business address and a statement of the nature of the business or employment and the nature of his or her duties and responsibilities in

1    connection with that business or employment.

2                                    **XI.**

3              **IMMEDIATE ACCESS TO DEFENDANTS' RECORDS**

4        IT IS FURTHER ORDERED that:

5        A.    Defendants and their successors, assigns, officers, agents, servants,

6    employees, and attorneys, and those persons in active concert or participation with

7    any of them who receive actual notice of this Order by personal service or

8    otherwise, whether acting directly or through any corporation, subsidiary, division,

9    or other device, and the Temporary Receiver, shall allow the FTC's representatives

10   immediate access to the business premises, mail drops, storage facilities, and all

11   other business locations owned, controlled, or used by Defendants, including, but

12   not limited to business premises at 879 W. 190th Street, Suite 400, 402, and 417,

13   Gardena, CA 90248. The purpose of the access shall be to effect service and to

14   inspect and copy materials relevant to this action. The FTC shall have the right to

15   remove documents from Defendants' premises in order that they may be inspected,

16   inventoried, and copied. The FTC shall return any such removed documents within

17   three (3) business days, or such time-period that is agreed upon by the FTC and

18   Defendants. Defendants, to the extent they are in possession of documents relevant

19   to this action, shall provide the FTC with the means necessary to access these

20   documents, including without limitation keys and combinations to locks, computer

21   access codes, and storage area access information; and

22

23       B.    The Temporary Receiver shall subsequently allow the FTC's

24   representatives, the representatives of the Defendants, and each of the Individual

25   Defendants reasonable access to the business premises of the Receivership

26   Defendants. The purpose of this access shall be to inspect and copy any and all

27   books, records, accounts, and other property owned by or in the possession of the

28   Receivership Defendants. The Temporary Receiver shall have the discretion to

1   determine the time and manner of this access; and

2        C.    If, at the time of service of this Order, any records or property relating

3   to Defendants' business or assets are located in the personal residence of any of the

4   Individual Defendants or in any other non-business location in their personal

5   control, then he shall, within forty-eight (48) hours of service of this Order, produce

6   to the FTC, at a location designated by the FTC, the following:

7        1.    All contracts, accounting data, written or electronic

8   correspondence, advertisements, computer tapes, discs, or other computerized or

9   electronic records, books, written or printed records, handwritten notes, telephone

10   logs, telephone scripts, telephone bills, receipt books, ledgers, membership records

11   and lists, refund records, receipts, ledgers, bank records (including personal and

12   business monthly statements, canceled checks, records of wire transfers, and check

13   registers), appointment books, copies of federal, state, and local business or

14   personal income or property tax returns, 1099 forms, title records, and other

15   documents or records of any kind that relate to Defendants' business and assets;

16   and

17        2.    All computers and data in whatever form, used by Defendants,

18   in whole or in part, relating to Defendants' business and assets.

19

20                        **XII.**

21         **APPOINTMENT OF TEMPORARY RECEIVER**

22        IT IS FURTHER ORDERED that *Thomas W. McNamara*

23   is appointed Temporary Receiver ("Receiver") for Defendants MDK Media Inc.,

24   also d/b/a SE Ventures, GMK Communications, and EMG; Tendenci Media LLC;

25   MindKontrol Industries LLC; Anacapa Media LLC; Bear Communications LLC;

26   and Network One Commerce Inc., as well as for any successors, assigns, affiliates,

27   and subsidiaries that conduct any business related to Defendants' placement of

28   third party charges on mobile phone bills and which the Temporary Receiver has

1   reason to believe are owned or controlled in whole or in part by any of the
2   Defendants (the "Receivership Defendants"), with the full power of an equity
3   receiver. The Temporary Receiver shall be the agent of this Court and solely the
4   agent of this Court in acting as Receiver under this Order. The Temporary
5   Receiver shall be accountable directly to this Court. The Temporary Receiver shall
6   comply with all Local Rules of this Court governing receivers.

## XIII.

## RECEIVERSHIP DUTIES

IT IS FURTHER ORDERED that the Temporary Receiver is directed and
authorized to accomplish the following:

A.      Assume full control of the Receivership Defendants by removing, as
the Temporary Receiver deems necessary or advisable, any director, officer,
independent contractor, employee, or agent of any Receivership Defendant,
including any named Defendant, from control of, management of, or participation
in, the affairs of the Receivership Defendant;

B.      Take exclusive custody, control, and possession of all assets,
documents, and electronically stored information of, or in the possession, custody,
or under the control of, the Receivership Defendants, wherever situated. The
Temporary Receiver shall have full power to divert mail and to sue for, collect,
receive, take in possession, hold, and manage all assets and documents of the
Receivership Defendants and other persons or entities whose interests are now held
by or under the direction, possession, custody, or control of the Receivership
Defendants. Provided, however, that the Temporary Receiver shall not attempt to
collect or receive any amount from a consumer if the Receiver believes the
consumer was a victim of the unlawful conduct alleged in the complaint in this
matter;

C.      Take all steps necessary to secure all premises owned, rented, leased,

16

1  or otherwise controlled by the Receivership Defendants, including but not limited to
2  all such premises located at 879 W. 190th Street, Suite 400, 402, and 417, Gardena,
3  CA 90248. Such steps may include, but are not limited to, the following, as the
4  Receiver deems necessary or advisable:

5          1.     Serving this Order;

6          2.     Completing a written inventory of all receivership assets;

7          3.     Obtaining pertinent information from all employees and other
8  agents of the Receivership Defendants, including, but not limited to, the name,
9  home address, social security number, job description, method of compensation,
10  and all accrued and unpaid commissions and compensation of each such employee
11  or agent, and all computer hardware and software passwords;

12          4.     Videotaping all portions of the location;

13          5.     Securing the location by changing the locks and disconnecting
14  any computer modems or other means of access to the computer or other records
15  maintained at that location;
16
17          6.     Requiring any persons present on the premises at the time this
18  Order is served to leave the premises, to provide the Receiver with proof of
19  identification, or to demonstrate to the satisfaction of the Receiver that such
20  persons are not removing from the premises documents or assets of the
21  Receivership Defendants; and

22          7.     Requiring all employees, independent contractors, and
23  consultants of the Receivership Defendants to complete a Questionnaire submitted
24  by the Receiver;

25      D.     Conserve, hold, and manage all assets of the Receivership Defendants,
26  and perform all acts necessary or advisable to preserve the value of those assets, in
27  order to prevent any irreparable loss, damage, or injury to consumers or to creditors
28  of the Receivership Defendants, including, but not limited to, obtaining an

1    accounting of the assets and preventing transfer, withdrawal, or misapplication of

2    assets;

3           E.      Enter into contracts and purchase insurance as the Receiver deems to

4    be advisable or necessary;

5           F.      Prevent the inequitable distribution of assets and determine, adjust,

6    and protect the interests of consumers and creditors who have transacted business

7    with the Receivership Defendants;

8           G.      Manage and administer the business of the Receivership Defendants

9    until further order of this Court by performing all incidental acts that the Receiver

10   deems to be advisable or necessary, which includes retaining, hiring, or dismissing

11   any employees, independent contractors, or agents;

12          H.      Choose, engage, and employ attorneys, accountants, appraisers, and

13   other independent contractors and technical specialists, as the Receiver deems

14   advisable or necessary in the performance of duties and responsibilities under the

15   authority granted by this Order. The Temporary Receiver may engage the services

16   of the law firm of which the Temporary Receiver is a member;

17

18          I.      Make payments and disbursements from the receivership estate that

19   are necessary or advisable for carrying out the directions of, or exercising the

20   authority granted by, this Order. The Receiver shall apply to the Court for prior

21   approval of any payment of any debt or obligation incurred by the Receivership

22   Defendants prior to the date of entry of this Order, except payments that the

23   Receiver deems necessary or advisable to secure assets of the Receivership

24   Defendants, such as rental payments;

25          J.      Determine and implement the manner in which the Receivership

26   Defendants will comply with, and prevent violations of, this Order and all other

27   applicable laws, including, but not limited to, obtaining consumers' express

28   agreement to the placement of charges on the consumers' telephone bills prior to